IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MICHAEL J. BURNETT, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 17-101 |
| | ) | Chief Magistrate Judge Maureen P. Kelly |
| v. | ) | |
| | ) | |
| UNION RAILROAD COMPANY, | ) | Re: ECF No. 9 |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

**KELLY, Chief Magistrate Judge**

Plaintiff Michael J. Burnett ("Plaintiff") initiated this action against Defendant Union Railroad Company ("Defendant"), alleging that Defendant subjected him to a hostile work environment because of his gender in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.* ("Title VII").

Presently before the Court is a Motion to Dismiss filed on behalf of Defendant. ECF No. 9. For the reasons that follow, the Motion to Dismiss will be denied.

**I.  FACTUAL AND PROCEDURAL BACKGROUND**

According to the Complaint, Plaintiff began working for Defendant in April of 2008. ECF No. 1 ¶12. Beginning in October of 2015, apparently because of a rumor that Plaintiff was gay, Plaintiff's co-workers and supervisors, the majority of which are male, began to harass Plaintiff with homophobic slurs such as "fag" and "butthole Burnett," "hot butt hole Burnett," "hot anus," and "hot butt fagot," and by asking Plaintiff whether he "was taking it up the ass" or whether he had "[taken] it up the ass lately." Id. ¶¶ 15-20. In addition, Plaintiff's locker and at least thirty railcars were vandalized with derogatory graffiti of a similar nature. Id. ¶¶ 18, 21, 24-26.

On January 6, 2016. after receiving telephone calls from friends and co-workers informing Plaintiff that they had seen trains with the graffiti on them, and concerned that his daughter might see them, Plaintiff reported the graffiti and harassment to his supervisor, Daniel Griffin, who told Plaintiff that he would have the graffiti removed. Id. ¶¶ 28-31. In addition, a division manager, Kevin Salmon, told Plaintiff that he would take care of the graffiti and the harassment. Although Mr. Salmon apparently spoke with Plaintiff's co-workers and told them that whoever was harassing Plaintiff would be suspended, as of January 24, 2016, the derogatory graffiti had still not been removed from the railcars and Plaintiff began to remove it himself. Id. ¶¶ 32-37. Moreover, Plaintiff continued to be harassed by both his co-workers and supervisors, which included finding a mocking form on his locker entitled, "UNION RAILROAD COMPANY HURT FEELINGS REPORT," which read:

> We, the Union Railroad Company, take hurt feelings very seriously. If you don't have someone who can give you a hug and make things all better, please let us know, and will promptly dispatch a "hugger" to you as soon as possible, In the event we are unable to provide a "hugger", we will notify the fire department and request that they send fire personnel to your location. If you are in need of supplemental support, upon written request, we will make every reasonable accommodation to provide you with a "blankey", a "binkey", and a "ba-ba" if you so desire.

Id. ¶¶ 38-41.

On February 17, 2016, Plaintiff also told Dana Cornibe, Manager of Transportation Operations, about the harassment and graffiti. Two days later, on February 19, 2016, Plaintiff was informed that he was removed from service "pending an investigation." Id. ¶¶ 42-43. It was not until a week later, on February 26, 2016, that Plaintiff was told he had been removed from service for a minor work rule violation, *i.e.*, that the caboose of Plaintiff's train had been stopped past a clearance point. Id. ¶¶ 44-45. Plaintiff was offered a Last Chance Agreement, whereby he would admit to violating a work rule and waive his rights to the grievance process under the

collective bargaining agreement in the event of a subsequent rule violation. Id. ¶ 46. Believing that employees who sign Last Chance Agreements are always terminated shortly thereafter and that he did not violate a rule, Plaintiff declined to sign the Last Chance Agreement and opted for a hearing and investigation into the matter. Id. ¶¶ 47-48.

A hearing was held on March 10, 2016, before Mr. Cornibe and on March 18, 2016, Plaintiff was informed that it had been determined that he violated the rule and was immediately fired. Id. ¶¶ 49-50. Defendant, which issues demerits based on rule violations, allegedly terminated Plaintiff's employment because he had received more than 100 demerits. Plaintiff, however, contends that several co-workers who had more than 100 demerits and were not terminated. Plaintiff also contends that prior to complaining to his supervisors about the sexual harassment he had received 75 demerits for six infractions but received 60 demerits for the one minor infraction after he complained about the hostile work environment. Id. ¶¶ 55-57.

After filing a timely Charge of Discrimination with the Equal Employment Opportunity Commission and receiving a right to sue letter, Plaintiff filed the instant two-count Complaint on January 20, 2017, bringing claims under Title VII for hostile work environment (Count I) and retaliation (Count II). ECF No. 1. On March 24, 2017, Defendant filed a Motion to Dismiss, ECF No. 9, to which Plaintiff filed a Brief in Opposition on April 13, 2017. ECF No. 13. Defendant filed a Reply Brief in support of its Motion on April 26, 2017. ECF No. 14. As such, the Motion is ripe for review.

## II. STANDARD OF REVIEW

In assessing the sufficiency of the complaint pursuant to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept as true all material allegations in the complaint and all reasonable factual inferences must be viewed in the light most favorable to

the plaintiff. Odd v. Malone, 538 F.3d 202, 205 (3d Cir. 2008). The Court, however, need not accept bald assertions or inferences drawn by the plaintiff if they are unsupported by the facts set forth in the complaint. See Cal. Pub. Employees' Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004), *citing* Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). Nor must the Court accept legal conclusions set forth as factual allegations. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). Rather, "[f]actual allegations must be enough to raise a right to relief above the speculative level." Id., *citing* Papasan v. Allain, 478 U.S. 265, 286 (1986). Indeed, the United States Supreme Court has held that a complaint is properly dismissed under Fed. R. Civ. P. 12(b)(6) where it does not allege "enough facts to state a claim to relief that is plausible on its face," id. at 570, or where the factual content does not allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). See Phillips v. Cty. of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008) (finding that, under Twombly, "labels, conclusions, and a formulaic recitation of the elements of a cause of action" do not suffice but, rather, the complaint "must allege facts suggestive of [the proscribed] conduct" and that are sufficient "to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s] of his claim").

### III. DISCUSSION

#### A. Hostile Work Environment Claim (Count I)

Title VII prohibits an employer from discriminating against an individual with respect to the "terms, conditions, or privileges of employment, because of such individual's . . . sex . . . ." 42 U.S.C. § 2000e–2(a)(1). "When the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, Title VII is violated." Betz v. Temple

4

Health Sys., 659 F. App'x 137, 142 (3d Cir. 2016), *quoting* Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993) (internal quotation marks omitted). To survive a motion to dismiss on a hostile work environment claim based on sex discrimination, a plaintiff is required to establish that (1) he or she suffered intentional discrimination "because of" his or her gender; (2) the discrimination was severe or pervasive; (3) the discrimination detrimentally affected him or her; (4) the discrimination would have detrimentally affected a reasonable person in the same position; and (5) the existence of respondeat superior liability. Id. *citing* Andrews v. City of Phila., 895 F.2d 1469, 1482 (3d Cir. 1990).

Further, in cases such as this, where the alleged harasser and the victim of the harassment are of the same sex, the United States Court of Appeals for the Third Circuit has found that there are at least three ways that the first element, *i.e.*, that the harassment amounted to discrimination because of the plaintiff's sex, may be satisfied: 1) where there is evidence that the harasser sexually desires the victim; 2) where there is no sexual attraction but where the harasser displays hostility to the presence of a particular sex in the workplace; or (3) where the harasser's conduct is motivated by a belief that the victim does not conform to the stereotypes of his or her gender. Bibby v. Phila. Coca Cola Bottling Co., 260 F.3d 257, 262-63 (3d Cir. 2001). See Betz v. Temple Health Sys., 659 F. App'x at 143.

Here, Plaintiff claims that he was subjected to on-going and pervasive harassment because of his perceived sexual orientation and because his harassers felt he did not conform to the male stereotype. ECF No. 1 ¶¶ 15, 65-68. Defendant argues that Plaintiff has failed to state a claim for gender based harassment as the Court of Appeals for the Third Circuit has expressly held that Title VII's protection does not extend to claims of discrimination based on sexual

orientation and that Plaintiff has otherwise failed to plead sufficient facts to state a failure to conform claim. The Court disagrees.

Although, as argued by Defendant, the Court of Appeals for the Third Circuit has stated in several cases that discrimination claims based on sexual orientation are not cognizable under Title VII,[1] recent jurisprudence within the Third Circuit and other jurisdictions have raised the question of whether discriminating against an employee for failure to conform to gender stereotypes isn't in fact the equivalent of discriminating against an employee because of his or her sexual orientation. See Hively v. Ivy Tech Cmty. Coll. of Ind., 853 F.3d 339, 341 (7th Cir. 2017) ("we conclude today that discrimination on the basis of sexual orientation is a form of sex discrimination"); Philpott v. N.Y., No. 16-6778, 2017 WL 1750398, at *2 (S.D.N.Y. May 3, 2017) ("plaintiff's sexual orientation discrimination claim is cognizable under Title VII"); Somers v. Express Scripts Holdings, No. 1:15-1424, 2017 WL 1332145, at *14 n.8 (S.D. Ind. Apr. 11, 2017) ("if Mr. Somers were to raise a claim based on sexual orientation, such a claim would be cognizable under Title VII); Boutillier v. Hartford Pub. Sch., No. 3:13-1303, ___ F. Supp. 3d ___, 2016 WL 6818348, at *9 (D. Conn. Nov. 17, 2016) ("the Court finds that Title VII protects individuals who are discriminated against on the basis of sex because of their sexual orientation"); Winstead v. Lafayette Cty. Bd. of Cty. Comm'rs, 197 F. Supp. 3d 1334, 1346 (N.D. Fla. 2016) ("[t]his view -- that discrimination on the basis of sexual orientation is necessarily discrimination based on gender or sex stereotypes, and is therefore sex discrimination -- is persuasive to this Court, as it has been to numerous other courts and the EEOC"); U.S. Equal Emp't Opportunity Comm'n v. Scott Med. Health Ctr., P.C., 217 F. Supp. 3d 834, 841 (W.D. Pa. 2016) ("[t]here is no more obvious form of sex stereotyping than making a

---

[1] See Bibby v. Phila. Coca Cola Bottling Co., 260 F.3d 257, 261 (3d Cir. 2001); Prowel v. Wise Business Forms, Inc., 579 F.3d 285, 289 (3d Cir. 2009); Betz v. Temple Health Sys., 659 F. App'x. 137, 143-44 (3d Cir. 2016).

6

determination that a person should conform to heterosexuality . . . . [D]iscrimination on the basis of sexual orientation is, at its very core, sex stereotyping plain and simple; there is no line separating the two"); Isaacs v. Felder Services, LLC, 143 F. Supp. 3d 1190, 1193 (M.D. Ala. 2015) (holding that claims of sexual orientation-based discrimination cognizable under Title VII); Baldwin v. Anthony Foxx, Sec'y, Dep't of Transp., EEOC Appeal No. 0120133080, 2015 WL 4397641, at *10 (EEOC July 16, 2015) (holding that "allegations of discrimination on the basis of sexual orientation necessarily state a claim of discrimination on the basis of sex"); Terveer v. Billington, 34 F. Supp. 3d 100, 116 (D.D.C. 2014) (finding that the plaintiff's allegations that he is a homosexual male whose sexual orientation is not consistent with the defendant's perception of acceptable gender roles, that his status as a homosexual male did not conform to the defendant's gender stereotypes associated with men, and that his orientation as homosexual was removed him from the defendant's preconceived definition of male, was sufficient to state a claim of sex discrimination); Heller v. Columbia Edgewater Country Club, 195 F. Supp. 2d 1212, 1222 (D. Or. 2002) ("[n]othing in Title VII suggests that Congress intended to confine the benefits of that statute to heterosexual employees alone"). See also Prowel v. Wise Business Forms, Inc., 579 F.3d 285, 289 (3d Cir. 2009) ("the line between sexual orientation discrimination and discrimination 'because of sex' can be difficult to draw"); Vickers v. Fairfield Med. Ctr., 453 F.3d 757, 764 (6th Cir. 2006) (recognizing that "all homosexuals, by definition, fail to conform to traditional gender norms in their sexual practices"); Videckis v. Pepperdine Univ., 150 F. Supp. 3d 1151, 1159 (C.D. Cal. 2015) (finding that sex discrimination necessarily includes sexual orientation discrimination under Title IX and that "the line between sex discrimination and sexual orientation discrimination is "difficult to draw" because that line does not exist, save as a lingering and faulty judicial construct").

The Court need not address the issue in this case, however, as it finds that Plaintiff has pled sufficient facts from which it can be inferred that Plaintiff was subjected to a hostile work environment because of gender nonconformity and thus has stated a claim of discrimination regardless of his sexual orientation, perceived or otherwise.

Specifically, Plaintiff has alleged that from October, 2015, until March, 2016, when his employment was terminated, he was subjected to ongoing and pervasive harassment by co-workers and supervisors including being called "fag," "butthole Burnett," "hot butt hole Burnett," "hot anus," and "hot butt fagot" and being asked whether he "was taking it up the ass" or whether he had "[taken] it up the ass lately." In addition, at least thirty railcars were vandalized with graffiti using the same derogatory remarks. ECF No. 1 ¶¶ 15- 39. Plaintiff has also alleged that after making several complaints about the harassment he was subjected to he found a mocking form on his locker entitled, "UNION RAILROAD COMPANY HURT FEELINGS REPORT," which read:

> We, the Union Railroad Company, take hurt feelings very seriously. If you don't have someone who can give you a hug and make things all better, please let us know, and will promptly dispatch a "hugger" to you as soon as possible, In the event we are unable to provide a "hugger", we will notify the fire department and request that they send fire personnel to your location. If you are in need of supplemental support, upon written request, we will make every reasonable accommodation to provide you with a "blankey", a "binkey", and a "ba-ba" if you so desire.

Id. ¶ 40. Plaintiff alleges that he was harassed because the Union employees felt that he did not conform to the male stereotype of being aggressive, assertive, and non-complaining; that he did not conform to the stereotype of the normal, hyper-masculine, heterosexual male; that, instead, they perceived him to be homosexual or weak like a woman; that his male co-workers harassed him for failing to conform to the male stereotype of being sexually attracted to women; that he was harassed for not performing stereotypical male behavior. Id. ¶¶ 66-68.

The Court finds these allegations sufficient to state a plausible hostile work environment discrimination claim based on nonconformity to gender stereotype and Defendant's Motion to Dismiss with respect to Count I of the Complaint will be denied.

B.     **Retaliation Claim (Count II)**

In order to succeed on a claim of retaliation, the plaintiff must show that: (1) he or she engaged in protected employee activity by opposing an unlawful or discriminatory employment practice; (2) an adverse action was taken against him or her by the employer; and (3) a causal connection between the employee's protected activity and the employer's adverse action. Daniels v. Sch. Dist. of Phila., 776 F.3d 181, 193 (3d Cir. 2015), *quoting* Marra v. Phila. Hous. Auth., 497 F.3d 286, 300 (3d Cir. 2007). Although the plaintiff "need not prove the merits of the underlying discrimination complaint," he or she must have an "objectively reasonable belief" that the activity the plaintiff opposed constituted unlawful discrimination under the relevant statute. Id., *quoting* Moore v. City of Phila., 461 F.3d 331, 344 (3d Cir. 2006); Wilkerson v. New Media Tech. Charter Sch. Inc., 522 F.3d 315, 322 (3d Cir. 2008).

Here, Defendant argues that Plaintiff cannot establish the first prong of a retaliation claim because he did not engage in protected activity. More specifically, Defendant argues that because sexual orientation discrimination is not protected under Title VII, and Plaintiff has failed to state a claim that he was discriminated against for failing to conform to traditional gender stereotypes, he could not have had an objectively reasonable belief that the conduct he opposed was unlawful.

The Court, however, has already found that Plaintiff has alleged sufficient facts to proceed on his hostile work environment discrimination claim based on nonconformance to gender stereotypes. Because discrimination based on nonconformance constitutes an unlawful

9

employment practice, it follows that Plaintiff engaged in protected activity when he complained to his supervisors. As such, the Court will deny Defendant's Motion to Dismiss as to Plaintiff's retaliation claim brought at Count II of the Complaint.

## IV. CONCLUSION

For the foregoing reasons, the Court finds that Plaintiff has alleged sufficient facts to state claims for hostile work environment discrimination and retaliation in violation of Title VII and that Defendant's Motion to Dismiss is properly denied. Accordingly, the following Order is entered:

## ORDER

AND NOW, this 26th day of June, 2017, upon consideration of the Motion to Dismiss filed on behalf of Defendant, Plaintiff's Brief in Opposition to Defendant's Motion to Dismiss and Defendant's Reply Brief, IT IS HEREBY ORDERED that Defendant's Motion to Dismiss, ECF No. 9, is DENIED.

BY THE COURT:

/s/ Maureen P. Kelly
MAUREEN P. KELLY
CHIEF UNITED STATES MAGISTRATE JUDGE

cc: All counsel of record via CM/ECF